**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TYRONE BOOZE,                              )
                                          )
      Plaintiff,                        )
                                          )
    v.                                    )          Case No. 4:18-CV-568 NAB
                                          )
ANDREW M. SAUL[1],                        )
Commissioner of Social Security,          )
                                          )
      Defendant.                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Tyrone M. Booze's appeal regarding the denial of disability insurance benefits under the Social Security Act.  The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g).  The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  [Doc. 5.]  The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence.  Based on the following, the Court will affirm the Commissioner's decision.

### Issues for Review

Booze contends that the administrative law judge's ("ALJ") residual functional capacity ("RFC") determination was not supported by the medical evidence; therefore the vocational expert's testimony regarding the RFC cannot be used to support a finding of non-disability.  The

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security.  Andrew M. Saul became the Commissioner of Social Security on June 4, 2019.  When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party.  Fed. R. Civ. P. 25(d).  Later proceedings should be in the substituted party's name and the Court may order substitution at any time.  *Id.*  The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## Discussion

**Background**

This case involves an extensive record. Booze is a high school graduate who served in the United States Navy between 1984 and 2000. (Tr. 440-41.) On March 9, 2005, Booze was found disabled as of September 20, 2000 and awarded disability insurance benefits. (Tr. 180.) The SSA found that Booze's disability ceased on May 14, 2014. (Tr. 181.) Booze did not appeal the decision. On December 2, 2014, he completed a new disability application, where Booze alleged that his disability began on August 2, 2014. (Tr. 436.) He asserted that he was unable to work due to panic attacks, anxiety, multiple joint sclerosis, right knee impairment, left knee impairment,

other psychiatric disorders, major depression and post traumatic stress disorder.  (Tr. 439.)  Booze

obtained a 100% disability rating from the Veterans Administration ("VA") and currently receives

VA benefits.  (Tr. 118, 133-46, 212-23, 380-408, 1172-76.)

The SSA initially denied Booze's claim and denied his reconsideration request.[2]  (Tr. 165-

76.)  Booze requested and received an administrative hearing before an administrative law judge.

(Tr. 195-96, 230-35.)  The first administrative hearing was held on October 4, 2016, before ALJ

William Kumpe.  (Tr. 114-32.)  Booze and vocational expert Dr. Darrel Taylor testified at the

hearing and Booze was represented by counsel.  ALJ Kumpe stated that he was going to order two

consultative examinations for internal medicine with a focus on Booze's heart, back, and joints

and a psychological evaluation.  (Tr. 127.)  ALJ Kumpe convened a second administrative hearing

on May 3, 2017, but he then recused himself from hearing Booze's claim, because of a conflict of

interest with Booze's new counsel.  (Tr. 109- 113.)  On July 26, 2017, a third administrative

hearing presided over by ALJ Lori Imsland was held where Booze and vocational expert Deborah

Determan testified.  (Tr. 78-108.)  Booze was represented by a new attorney at the third

administrative hearing as well.

ALJ Imsland issued an opinion denying Booze's claim for disability benefits on September

25, 2017.  (Tr. 52-68.)  On February 23, 2018, the Appeals Council denied Booze's request for

review.  (Tr. 1–5.)  The decision of the ALJ thus stands as the final decision of the Commissioner.

*See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Booze filed this appeal on April 12, 2018.  [Doc 1.]

The parties completed briefing this matter on February 6, 2019.

---

[2] Booze's claim was initially filed in California, which allows for reconsideration of a claimant's initial denial.
Missouri is a state that eliminates the reconsideration step of the administrative process.  20 C.F.R. § 404.906(4).

**ALJ Decision**

The ALJ found that Booze met the insured status requirements of the Social Security Act through September 30, 2019.  (Tr. 55.)  The ALJ found that he had not engaged in substantial activity since August 2, 2014, the alleged onset date.  (Tr. 55. )  She determined that Booze had the following severe impairments:  status post repair of right quadriceps, degenerative joint disease in the knees, obesity, psychosis (not otherwise specified), PTSD, and depression.  (Tr. 55.)  She determined that Booze's eczema, hypertension, erectile dysfunction, atrioventricular block and status post pacemaker implantation, folliculitis were non-severe.  (Tr. 55.)  She found that Booze did not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  The ALJ then found that Booze had the RFC to perform medium work[3] with the following additional limitations:  (1) lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently;  (2) never climb ropes, ladders, or scaffolds;  (3) occasionally climb ramps and stairs;  (4) balance, stoop, kneel, crouch, and crawl;  (5) no exposure to extreme cold, vibration, unprotected heights, and hazardous machinery;  (6) limited to simple, routine work tasks with minimal changes in job setting and duties;  (7) no contact with the general public; and (8) only occasional contact with coworkers and supervisors.  (Tr. 58.)  Booze had no past relevant work.  (Tr. 66.)  Due to his date of birth, he is classified as closely approaching advanced age on the alleged onset date.  (Tr. 66.)  Next, the ALJ determined that considering Booze's age, education, work experience, and RFC, there were jobs in the national economy that he could perform as laboratory equipment cleaner, hand packager, laundry worker, marker, packing line worker, and palletizer.  (Tr. 67.)  Therefore, the ALJ held that Booze had not been

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

under a disability, as defined in the Social Security Act, from August 2, 2014 through the date of

the decision on September 25, 2017.  (Tr. 67.)

**Medical Opinion Evidence**

The administrative record in this case contains at least thirteen medical opinions.  The

Court will summarize each of these opinions to inform the discussion of the ALJ's RFC

determination.

### Dr. Camellia Clark

Dr. Camellia Clark, a psychiatrist, evaluated Booze on March 20, 2014.  (Tr. 525-27, 1089-

91.)  Booze reported that he had a long psychiatric history and had been previously diagnosed with

PTSD, depression, and psychosis.  (Tr. 525, 1089.)  Booze also reported four psychiatric

hospitalizations between 2000 and 2012.  (Tr. 525, 1089.)  Booze's mental status examination was

normal.  (Tr. 526, 1090.)  His mood was good, his affect was full and congruent, and his thought

processes were logical and goal-directed.  (Tr. 526, 1090.)  Dr. Clark diagnosed Booze with

psychosis, not otherwise specified, PTSD, and depression, not otherwise specified.  She opined

that he had "no mental health restrictions."  (Tr. 526, 1090.)  The ALJ gave this opinion partial

weight, because additional records indicate Booze had more restrictive mental limitations.  (Tr.

63.)

### Dr. Preston Davis

The following month, Dr. Preston Davis, a state agency psychologist, reviewed Booze's

mental health record and completed a Psychiatric Review Technique and Mental Residual

Functional Capacity assessment.  (Tr. 530-41, 1092-1107.)  Dr. Davis also reviewed Booze's

medical record and diagnosed Booze with unspecified psychotic disorder, depressive disorder, and

anxiety disorder.  (Tr. 532-34, 1098-1100.)  He opined that Booze was mildly limited in activities

of daily living, moderately limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace.  (Tr. 538, 1104.)  Specifically, he opined that Booze was moderately limited in his ability to interact appropriately with the general public and respond to changes in the work setting.  (Tr. 1093.)  He opined that Booze could understand remember, and carry out complex work instructions.  (Tr. 1094.)  He also opined that Booze could sustain his concentration, pace, and persistence with his work tasks for two hour blocks of time with customary breaks over the course of a regular workday.  (Tr. 1094.)  Dr. Davis found that Booze can interact with supervisors and co-workers that he knows well.  (Tr. 1094.)  He opined that Booze would have difficulty interacting with the general public on a consistent basis.  (Tr. 1094.)  He further found that Booze can adapt to a work setting that is simple and routine.  (Tr. 1094.)  The ALJ gave Dr. Davis' opinion great weight stating that the limitations expressed are consistent with the medical records and deserve great weight.  (Tr. 58.)

**Dr. Thu N. Do**

A state agency physician, Dr. Thu N. Do, completed a medical opinion after a review of Booze's medical record on May 5, 2014.  (Tr. 542-49, 1149-57.)  He did not examine Booze.  Dr. Do opined that Booze could occasionally lift and or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday.  (Tr. 543, 1150.)  Dr. Do found that Booze may frequently climb ramps and stairs, stoop, kneel, crouch, and crawl.  (Tr. 544, 1151.)  Dr. Do found that Booze may occasionally balance and climb ladders, ropes, or scaffolds.  (Tr. 544, 1151.)  Dr. Do found that Booze did not have any manipulative, visual, communicative, or environmental limitations. (Tr. 544-46, 1151-53.)  Dr. Do wrote that Booze had only received intermittent conservative treatment.  (Tr. 547, 1153.)  He wrote that Booze's reported activities of boxing, tai chi, and going

to the gym were not compatible with disabling physical limitations.  (Tr. 547, 1153.)  The ALJ gave this opinion great weight finding that it was consistent with the medical records and treatment in the case.  (Tr. 59-60.)  The ALJ also noted that additional medical records after Dr. Do's opinion indicate that additional restrictions regarding dizziness and problems with the cold were required to be included in the RFC.  (Tr. 60.)

**Dr. Cory Brown**

On February 5, 2015, Dr. Cory Brown, a state agency psychologist, completed a mental medical opinion regarding Booze.  (Tr. 157-58.)  Dr. Brown based his opinion on Booze's medical records and did not examine Booze.  He found that Booze did not have a severe mental impairment and had no restrictions in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace.  (Tr. 158.)  This opinion was relied upon during the initial denial of Booze's claim.  The ALJ gave this opinion little weight noting that Booze's mental impairments were severe.  (Tr. 58.)

**Dr. Thomas Sabourin**

On March 5, 2015, Dr. Thomas Sabourin completed an orthopedic consultative examination of Booze.  (Tr. 624-28.)  Booze reported that he had pain in both knees.  (Tr. 624.)  Dr. Sabourin noted that Booze's gait and posture were normal.  (Tr. 625.)  Booze did not use any assistive device and he was able to toe and heel walk.  (Tr. 625.)  The range of motion of his cervical and lumbar spines was grossly normal.  (Tr. 625.)  His straight leg raising test was within normal limits in both the sitting and supine positions.  (Tr. 625.)  He exhibited normal and painless range of motion for his shoulders, elbows, wrists, hands, fingers, hips, ankles, and feet.  (Tr. 626.)  Examination of the left knee revealed a 1+ medial instability, tenderness over the medial compartment, and palpable spurs in that area.  (Tr. 626.)  There was obvious atrophy of the right

quadriceps mechanism compared with the left.  (Tr. 626.)   Although there was restriction in

flexion, he actually flexed a little farther on the right.  (Tr. 626.)  There was also mild crepitus on

the medial aspect of the left knee.  (Tr. 626.)  Pulses and deep tendon reflexes were normal.  (Tr.

626-27.)  Motor strength and sensation were normal throughout the upper and lower extremities.

(Tr. 627.)

Dr. Sabourin diagnosed Booze with tear of right quadriceps mechanism, status post repair

x2 and degenerative arthritis, mild, medial compartment of the left knee with +1 instability.  (Tr.

627.)  Dr. Sabourin opined that given Booze's knee problems he has the following limitations:

(1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand, walk, and sit for 6

hours in an 8 hour workday; (3) limited to pushing and pulling 50 pounds occasionally and 25

pounds frequently; and (4) climb, kneel, and crouch occasionally.  Dr. Sabourin did not find any

stooping or manipulative limitations.  (Tr. 627.)   The ALJ gave Dr. Sabourin's opinion little

weight, because there was no support for upper extremity limitations in the record.  (Tr. 60-61.)

**Dr. R. Bitonte**

On March 13, 2015, Dr. R. Bitonte, a state agency physician, completed a physical medical

opinion regarding Booze.  (Tr. 158-161.)  Dr. Bitonte reviewed Booze's medical records and did

not examine Booze.  Dr. Bitonte opined that Booze could occasionally lift and/or carry 20 pounds,

frequently lift and/or carry up to 10 pounds, stand and/or walk 6 hours in an 8 hour workday, and

sit with normal breaks 6 hours in an 8 hour workday.  (Tr. 159.)  Dr. Bitonte opined that Booze

could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders,

ropes, or scaffolds; and frequently balance.  (Tr. 160.)  He opined that was Booze limited to

pushing and pulling to lifting and carrying exertional limit.  (Tr. 159.)  Dr. Bitonte did not find that

Booze had any manipulative, vision, or communicative limitations.  (Tr. 160.)  Dr. Bitonte found

that Booze must avoid concentrated exposure to extreme cold, wetness, vibration, and hazards (machinery and heights).  (Tr. 161.)  This opinion was relied upon in the initial denial of Booze's claim.  The ALJ gave Dr. Bitonte's opinion little weight, because the record indicates that Booze is able to do more than indicated in the opinion.  (Tr. 61.)

**Dr. Robert Townsend**

Dr. Robert Townsend, a VA psychologist, completed a Disability Benefits Questionnaire for Booze.  (Tr. 824-27.)  Dr. Townsend diagnosed Booze with other psychotic disorder.  (Tr. 824.) Dr. Townsend indicated that Booze's symptoms included depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, difficulty in understanding complex commands, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including at work or a work like setting, obsessional rituals which interfere with routine activities, and persistent delusion or hallucinations.  (Tr. 827.)  Dr. Townsend concluded that Booze's "prior depressive disorder appears to be in remission, but he is presently disabled from gainful employment due to his unspecified psychotic disorder, with paranoia." (Tr. 827.)  The ALJ gave the opinion no weight, because the opinion provided no supporting functional limitations.  (Tr. 63.)

**Dr. K. Loomis**

Dr. K. Loomis, a state agency psychologist, reviewed Booze's mental impairments at the reconsideration level of review on May 28, 2015.  (Tr. 171-72.)  Dr. Loomis found that Booze's mental impairments were non-severe and that he had no restrictions of activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace.  (Tr. 171-72.) The ALJ did not mention this opinion.

**Dr. S. Laiken**

Dr. S. Laiken, a state agency physician, reviewed Booze's physical impairments at the reconsideration level of review on June 4, 2015. (Tr. 173-74.)  Dr. Laiken opined that Booze could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 6 hours in an 8 hour workday, and sit with normal breaks 6 hours in an 8 hour workday. (Tr. 173.) Dr. Laiken opined that Booze could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffold, frequently balance, and occasionally stoop, kneel, crouch, and crawl. (Tr. 173-74.)  He opined that Booze was limited to pushing and pulling to the above identified exertional limits. (Tr. 173.)  Dr. Laiken did not find that Booze had any manipulative, vision, or communicative limitations. (Tr. 174.)  Dr. Laiken opined that Booze must avoid concentrated exposure to extreme cold, vibration, and hazards (machinery and heights). (Tr. 174.)  The ALJ gave no weight to Dr. Laiken's opinion, because "there was no rational correlation between any impairment [Booze] has been diagnosed with in this case and the preclusion from wetness exposure." (Tr. 61.)

**Dr. David Bittleman**

On June 5, 2015, Dr. David Bittleman completed a Disability Impairment Questionnaire regarding Booze. (Tr. 751-55.)  Dr. Bittleman noted that he had examined Booze once on May 18, 2015, at the time the questionnaire was completed. (Tr. 751.)  Dr. Bittleman diagnosed Booze with psychosis, chronic chest pains, back pains, knee pains, and depression. (Tr. 751.)  He opined that Booze was unable to work at all. (Tr. 753.)  Dr. Bittleman stated that Booze could sit, stand, and/or walk for less than 1 hour in an 8 hour day. (Tr. 753.)  He also found that Booze would have to get up from a seated position every 10 minutes for a 10 minute period of time while working. (Tr. 753.)  Dr. Bittleman opined that Booze could not lift or carry any weight. (Tr. 753.)  He

opined that Booze would experience symptoms, pain, and fatigue frequently up to 2/3 of an 8 hour workday. (Tr. 754.) Dr. Bittleman indicated that Booze would need to take 30 minute unscheduled breaks every 30 minutes during an 8 hour workday to rest. (Tr. 754.) He indicated that Booze would be absent more than 3 times per month as a result of his impairments or treatment. (Tr. 755.) Dr. Bittleman opined that Booze's depression increased his pain. (Tr. 755.) The ALJ did not explicitly assign a weight to the June 5, 2015 opinion, but she gave the May 18, 2015 treatment notes that it was based off of no weight. (Tr. 60.) The ALJ wrote that June 2015 opinion was based on a one-time assessment and he just took Booze's word for every alleged limitation and repeated it in the opinion. (Tr. 61.) Therefore, it appears the ALJ also gave this opinion no weight. (Tr. 61.)

### Dr. Gregory Goldman

On November 7, 2016, Dr. Gregory Goldman, a consultative examiner, evaluated Booze and reviewed Booze's previous psychiatric records. (Tr. 1192-1199.) Booze reported to Goldman that he had mood swings, thoughts of bad experiences, felt on guard and distrustful of everyone, and hearing voices. (Tr. 1192-93.) He also reported difficulty sleeping. (Tr. 1193.) He reported that the erroneous implantation of a pacemaker ruined his career. (Tr. 1193.)

Dr. Goldman observed that Booze's mood was up and down and his affect was appropriate to the content. (Tr. 1194.) Booze reported passive suicidal ideation and auditory and tactile hallucinations. (Tr. 1194.) Booze's thought process was goal oriented and coherent. (Tr. 1194.) His insight was adequate. (Tr. 1194.) Dr. Goldman diagnosed Booze with PTSD. (Tr. 1195.) Dr. Goldman opined that Booze's ability to understand and remember instructions, interact socially, and adapt to his environment is mildly impaired. (Tr. 1195.) He opined that Booze was mildly to moderately impaired in the ability to sustain concentration and persistence in tasks. (Tr. 1195.)

Specifically, Dr. Goldman found that Booze was mildly impaired in the ability to understand, remember, and carry out simple instructions and the ability to make simple work related decisions. (Tr. 1197.)  He also found that Booze was moderately limited in his ability to understand, remember, and carry out complex instructions and the ability to make complex work-related decisions. (Tr. 1197.)  Dr. Goldman indicated that Booze was mildly limited in interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1198.)  Dr. Goldman indicated that Booze was moderately limited in interacting appropriately with the public and co-workers. (Tr. 1198.)  The ALJ gave Dr. Goldman's opinion some weight, because it was "somewhat consistent with the evidence in this case." (Tr. 64.)

### Dr. Nirmala Mathew[4]

Dr. Nirmala Mathew completed a physical consultative examination of Booze on November 7, 2016. (Tr. 1177-1191.)  In addition to his examination of Booze, Dr. Mathew reviewed Booze's VA records. (Tr. 1177.)  The examination indicated essentially normal findings. (Tr. 1179-80.)  Dr. Mathew noted that Booze reported a right knee impairment, but range of motion in the right knee was not impaired. (Tr. 1180.)  Dr. Mathew also noted that Booze reported swelling as well as exhibiting pain and crepitus in the left knee. (Tr. 1180.)  Dr. Mathew observed that Booze wore a left knee brace and showed reduced range of motion in the left knee. (Tr. 1180.)  Dr. Mathew noted that there was evidence of left knee osteoarthritis in the form of joint space narrowing as well as osteophytes from the VA records. (Tr. 1180.)  Booze's range of motion on flexion-extension of the right knee was reduced by 50 degrees and reduced by 60 degrees on the left knee. (Tr. 1190.)  The forward flexion of the right and left hips were reduced by 10 degrees.

---

[4] The ALJ transposed Dr. Nirmala Mathew's name in the opinion.  (Tr. 62.)

(Tr. 1191.)  The flexion-extension of the lumbar spine was reduced by 15 degrees.  (Tr. 1191.)  Straight leg raise was 0 to 70 degrees in the supine position bilaterally.  (Tr. 1180, 1191.)

Dr. Mathew opined that Booze could occasionally lift and carry up to 20 pounds; frequently reach in all directions; frequently handle, finger, feel, push, and pull with both hands; and frequently operate foot controls with both feet, occasionally climb stairs, ramps, ladders, or scaffolds, never crawl, and occasionally kneel.  (Tr. 1183-86.)  He further opined that Booze could sit for 15 minutes and stand or walk for 30 minutes at one time without interruption.  (Tr. 1184.)  He found that Booze could sit for a total of 1 hour and 30 minutes, and stand or walk for 2 hours total in an 8 hour workday.  (Tr. 1184.)  Booze can walk for a city block at a reasonable pace with a left knee brace.  (Tr. 1180.)  Dr. Mathew opined that Booze could frequently operate a motor vehicle and occasionally be exposed to moving mechanical parts or extreme heat.  (Tr. 1187.)  Booze could never be exposed to unprotected heights, humidity and wetness, dust, odors, fumes, and pulmonary irritants, or extreme cold.  (Tr. 1187.)  He must also be exposed to a quiet environment.  (Tr. 1187.)  The ALJ gave Dr. Mathew's opinion little weight, because the examination records do not support the limitations contained in the opinion.  (Tr. 62.)

**Dr. Daniel Murray**

Dr. Daniel Murray, Booze's treating psychiatrist, completed a mental impairment questionnaire on April 25, 2017.  (Tr. 1395-99.)  Dr. Murray indicated that he began treating Booze on November 2, 2016 and his most recent treatment occurred on March 7, 2017.  (Tr. 1395.)  Dr. Murray diagnosed Booze with major depressive disorder, severe with psychotic features.  (Tr. 1395.)  Dr. Murray identified the following symptoms that support Booze's diagnosis and treatment:  depressed mood, feelings of guilt or worthlessness, hostility or irritability, grandiose thoughts, illogical thinking, difficulty thinking or concentrating, easy distractibility, intrusive

14

recollections of a traumatic experience, paranoia/suspiciousness, persistent irrational fears, vigilance and scanning, decreased energy, impulsive or damaging behavior, agitation, pressured speech, social withdrawal or isolation, delusions, and decreased need for sleep.  (Tr. 1396.)  Dr. Murray indicated that Booze's most severe symptoms were paranoia, delusion, and social isolation.  (Tr. 1397.)

Dr. Murray opined that Booze had moderate limitations in remembering locations and work-like procedures and understanding and remembering detailed instructions.  (Tr. 1398.) Booze had moderate limitations in asking simple questions, requesting assistance, and responding appropriately to workplace changes.  (Tr. 1398.)  Booze had moderate to marked limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, making simple work-related decisions, performing at a consistent pace without rest periods of unreasonable length or frequency, maintaining socially appropriate behavior, being aware of hazards and taking appropriate precautions.  (Tr. 1398.)  Dr. Murray determined that Booze had marked limitations in his ability to perform activities within a schedule and consistently be punctual, work in coordination with or near others without being distracted by them, complete a workday without interruptions from psychological symptoms, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them, set realistic goals, and make plans independently. (Tr. 1398.)  Dr. Murray opined that Booze would likely be absent from work more than 3 times per month.  (Tr. 1399.)  The ALJ gave Dr. Murray's opinion little weight, because the marked limitations lack support in the medical records.  (Tr. 64.)

**RFC Determination**

Booze contends that the ALJ's RFC determination is not supported by substantial evidence for the following reasons.  Booze states that the ALJ improperly evaluated the medical opinion evidence, failed to properly assess Booze's subjective complaints, and erred in her consideration of the third party evidence of the VA's disability rating and the statement from Booze's fiancé.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(a).  The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[5]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217.  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox*, 471 F.3d at 907.

### Evaluation of Medical Opinion Evidence

Booze states that the ALJ makes unsupported medical conjecture regarding the sufficiency of the medical opinions.  Booze also states that the treatment records do not contradict the opinions given by the doctors and are at most neutral.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her

---

[5] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

impairments and her physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2)[6].  All medical

opinions, whether by treating or consultative examiners, are weighed based on (1) whether the

provider examined the claimant; (2) whether the provider is a treating source; (3) length of

treatment relationship and frequency of examination, including nature and extent of the treatment

relationship; (4) supportability of opinion with medical signs, laboratory findings, and

explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors

which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently

entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's

opinion "does not automatically control or obviate the need to evaluate the record as [a] whole."

*Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  A treating physician's opinion will be

given controlling weight if the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

case record.  20 C.F.R. § 404.1527(c); *see also Hacker*, 459 F.3d at 937.  "Whether the ALJ grants

a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must

'always give good reasons' for the particular weight given to a treating physician's evaluation."

*Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where

the treating physician's opinions are themselves inconsistent, or where other medical assessments

are supported by better or more thorough medical evidence."  *Chesser v. Berryhill*, 858 F.3d 1161,

1164 (8th Cir. 2017) (internal citations omitted).  The court reviews "the record to ensure that an

ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ

---

[6] Several Social Security regulations were changed effective March 27, 2017.  The Court will use the regulations
effective at the time that this claim was filed in 2014.

to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

In this case, the medical opinions' conclusions varied substantially from finding no severe impairments to finding total disability.  Most of the medical opinions indicated that Booze had some restrictions, but was not totally disabled.  Booze contends that the ALJ makes unsupported medical conjecture regarding the sufficiency of the medical opinions.  Booze does not meet his burden to show that the ALJ's evaluation of the medical opinion evidence was erroneous.  Booze essentially requests that the Court re-weigh the evidence, which the Court cannot do on administrative review.  See *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) ("In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed.").  Booze mentions that the ALJ gave great weight to some non-examining physicians and no weight to some of Booze's treating physicians.  But, Booze does not explain how the ALJ's assessment of the individual doctors violates the Social Security regulations or the applicable law. There are situations where an ALJ's decision to grant greater weight to a non-examining physician rather than a treating physician would be supported by substantial evidence.  For example, Booze's treating physician, Dr. Bittleman, wrote an opinion based on his initial visit.  The ALJ gave no weight to the opinion.  The longevity of treatment is an important factor in evaluating medical opinions as stated in 20 C.F.R. § 404.1527.  *See Chesser*, 858 F.3d at 1164 (court notes that "treating physician" had only treated claimant once before opinion was rendered).  The ALJ also noted that Dr. Bittleman's opinion was not supported by other medical evidence in the record. Therefore, the ALJ did not err in failing to grant controlling weight to this opinion.  Because Booze had not specifically identified any errors in the ALJ's evaluation of the medial opinion evidence, the Court finds that the ALJ's analysis is supported by substantial evidence.

**Subjective Complaints**

Next, Booze asserts that the ALJ failed to properly address his subjective complaints and their consistency with the record.  In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1)  The claimant's daily activities;
>
> (2)  The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3)  Any precipitating or aggravating factors;
>
> (4)  The dosage, effectiveness, and side effects of any medication; and
>
> (5)  The claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence.  *Id.*  The ALJ, however, "need not explicitly discuss each *Polaski* factor."  *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).  The ALJ need only acknowledge and consider those factors.  *Id.*  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).  "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility."  *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

"Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant."

*Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978).  "Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain."  *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

It appears that Plaintiff's primary argument is that the ALJ evaluated Booze's credibility solely on objective medical evidence.  Plaintiff further argues that the ALJ did not analyze Booze's credibility and merely rejected or accepted various medical opinions in the record.  The Court disagrees.  The ALJ's opinion specifically addressed Booze's activities of daily living as alleged in his Adult Function Report, testimony, and as reported during his medical examinations.  (Tr. 56-57, 59-64.)  The ALJ noted that she considered Booze's pain allegations, including the fact that Booze is not taking narcotic medications.  (Tr. 62.)  Although Booze used a cane and brace/splint at times, the ALJ found there was no evidence that these were medically prescribed.  (Tr. 63.)  The ALJ noted that Booze's mental impairments were stable for many years on Risperdal.  (Tr. 63.)  The ALJ could consider Booze's activities that indicated a greater level of activity, conservative treatment for pain, and the effectiveness of Booze's medication in considering his subjective complaints.  See *Wildman v. Astrue,* 596 F.3d 959, 965 (2010) (an impairment controlled by treatment or medication cannot be considered disabling), *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility).  The ALJ did not rely on any one factor to assess Booze's subjective complaints; therefore, the Court finds that the ALJ did not err in consideration of his subjective complaints.

**Third-Party Statements**

Then, Booze asserts that the ALJ erred in consideration of third-party statements, specifically the award of a 100% disability rating from the VA and Plaintiff's fiancé's statement.

The SSA is not bound by any finding of disability by another governmental agency.  The regulation effective at the time Plaintiff's claim was filed states the following:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.  "The ALJ should consider the VA's finding of disability, *Morrison v. Apfel,* 146 F.3d 625, 628 (8th Cir.1998), but the ALJ is not bound by the disability rating of another agency" when she is evaluating whether the claimant is disabled for purposes of social security benefits.  *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (citing 20 C.F.R. § 404.1504). Plaintiff states that the ALJ did not assess the VA's vocational rehabilitation assessment (Tr. 212-23).  The ALJ directly cites to the assessment and states that the assessment and disability ratings were given little weight, because the VA and SSA use different criteria to assess disability.  (Tr. 65.)  The Court finds no error in the ALJ's analysis of the VA vocational rehabilitation assessment.

Booze's fiancé, Sharon Lowery, completed a Third-Party Adult Function Report on January 8, 2014.  (Tr. 446-54.)  In this statement, she states that she has known Booze for over 30 years.  (Tr. 446.)  She indicated that his illnesses affect his short term memory, cause mood swings, and limit prolonged standing.  (Tr. 446, 449.)  She wrote that Booze was "not able to work with people in general."  (Tr. 446.)  She also noted that he was no longer able to swim much, run marathons, or practice martial arts.  (Tr. 447, 450.)  She indicated that he needs reminders taking medication and he has trouble sleeping.  (Tr. 447-48.)  The ALJ gave Lowery's statement some weight.  (Tr. 66.)  The ALJ noted that although Lowery indicated that Booze had trouble standing, she noted that they shopped, took walks, and saw concerts.  (Tr. 66.)

Plaintiff contends that the ALJ failed to create a "logical bridge" between Lowery and Booze's daily activities and Booze's ability to engage in sustained work activity.  In the evaluation of third-party statements, the ALJ uses the statements to show the severity of impairments and how it affects the claimant's ability to work.  20 C.F.R. § 404.1513.  The Court finds no error in the ALJ's evaluation of Lowery's third party statement.  The ALJ only partially discounted the statement and the ALJ was correct that some of the activities may indicate Booze's impairments were less severe than alleged.

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

**Vocational Testimony**

Finally, the Court finds that the vocational expert's response to the ALJ's hypothetical question constitutes substantial evidence.  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).  These impairments must be based on the "substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (2010).  If the hypothetical question is properly formulated, then the testimony of the vocational expert constitutes substantial evidence. *Roe v. Chater*, 93 F.3d 672, 676 (8th Cir. 1996).

In this case, the ALJ's hypothetical question included all of the limitations set forth in the ALJ's description of Booze's RFC.  The Court has found that the ALJ's RFC determination was supported by substantial evidence, therefore, the hypothetical question was proper and the vocational expert's answer constituted substantial evidence supporting the Commissioner's denial of benefits.

22

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole.  As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014).  The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently.  *Id.*  A review of the record as a whole demonstrates that Booze has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination.  *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC).  For reasons set forth above, the Court affirms the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**.  [Docs. 1, 16.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June 2020